**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| HOWARD O. BLANKENSHIP, | ) | Case No.: | 12-10107-JDW |
| | ) | | |
| DEBTOR. | ) | Chapter 7 | |

| | | | |
|---|---|---|---|
| INTERSTATE PLYWOOD CO., LLC, | ) | | |
| and GEORGE R. WINFIELD, | ) | | |
| | ) | | |
| PLAINTIFFS | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 12-01051-JDW |
| | ) | | |
| HOWARD O. BLANKENSHIP, | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (A.P. DOC. 29)**

This adversary proceeding is before the Court on the Motion for Summary Judgment (the "Motion")(A.P. Doc. 29) filed by Interstate Plywood Co., Inc. ("IPC") and George R. Winfield ("Winfield") (collectively, the "Plaintiffs"), against the Defendant in this matter, Howard O. Blankenship (the "Debtor"). Plaintiffs filed this adversary proceeding against the Debtor, alleging that certain debts owed to them by the Debtor are nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and/or (a)(6); however, the Plaintiffs are seeking summary judgment solely under 11 U.S.C. § 523(a)(4). The Motion was filed, along with the Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment (A.P. Doc. 30), on April 1, 2013. The Court held a status hearing in this case on May 22, 2013, at which the Plaintiffs appeared through their counsel, Julie C. Bartholomew, but the Debtor/defendant did not appear. The Court took the Motion under advisement at the status hearing. The Debtor has not filed a

1

response to the Motion. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (I).[1]

## I. FINDINGS OF FACT

Subsection (e) of Rule 56 of the Federal Rules of Civil Procedure[2] governing summary judgment provides:

> (e) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> . . . .
>
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it;
>
> . . . .

FED. R. CIV. P. 56. In the case before this Court, the nonmoving party – the Debtor – is now proceeding pro se and has failed to respond to the Plaintiff's Motion. The Court may therefore deem all facts as presented by the Plaintiff as undisputed. *Id.* Nevertheless, the Court must still consider the reliability, propriety and relevance of the evidence submitted by the Plaintiff. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Further, the Defendant's failure to respond to the Motion does not shift the initial burden from the Plaintiff to prove that there is no genuine issue of material fact.

> [T]he party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact,"... If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7052.

[2] Federal Rule of Bankruptcy Procedure 7056 incorporates without modification of Rule 56 of the Federal Rules of Civil Procedure.

2

*Little*, 37 F.3d at 1075 (emphasis original); *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Plaintiff has submitted sufficient evidence in this adversary proceeding to support the following, relevant factual findings, which are all supported by Winfield's sworn affidavit. (A.P. Doc. 30, Exh. 1).

Plaintiff IPC is a limited liability company, doing business in Shelby County, Tennessee. 61 Cabinet, Inc. ("Cabinet") was a corporation that was also doing business in Shelby County, Tennessee. Cabinet is no longer operating. The Debtor was the President of Cabinet (A.P. Doc. 30, Exh. 2). On July 27, 1998, IPC entered into an Agreement Establishing Open Account with Cabinet, which was individually guaranteed by the Debtor and his daughter Louise Renee Blankenship[3] (the "Guarantors"), corporate officers of Cabinet. (A.P. Doc. 30, Exh. 1, ¶ 2). In December 2009, after apparent failures to pay by Cabinet and the Guarantors (collectively, the "Obligors"), IPC assigned its interest in all debts owed by the Obligors to IPC prior to September 8, 2009, to Winfield. (A.P. Doc. 30, Exh. 1, ¶ 4). As further security for payment of the indebtedness due to Winfield, the Debtor collaterally assigned a life insurance policy on his own life to Winfield. (A.P. Doc. 30, Exh. 1, ¶ 5). The Obligors agreed to pay the life insurance premiums, but have failed to do so. (A.P. Doc. 30, Exh. 1, ¶ 6). In order to maintain the policy, Winfield has continued to pay the premiums. (A.P. Doc. 30, Exh. 1, ¶17).

IPC filed a lawsuit against the Obligors, but obtained a default judgment solely against Cabinet, in the amount of $92,900.26, plus court costs, on July 23, 2010, for the indebtedness incurred after September 8, 2009.[4] (A.P. Doc. 30, Exh. 1, ¶10). On August 16, 2011, Winfield also obtained a judgment against Cabinet, in the amount of $1,178,818.02, plus court costs, for the pre-September 8, 2009 indebtedness assigned to him by IPC and the life insurance premiums.

---

[3] Louise Renee Blankenship is also a chapter 7 debtor in a separate case pending before this Court (Case Number 11-13484-JDW).
[4] It is not clear from the record why the IPC did not obtain this judgment against the Guarantors as well.

(A.P. Doc. 30, Exh. 1, ¶ 13).[5] Both judgments are now final and nonappealable. (A.P. Doc. 30, Exh. 1, ¶¶ 11, 14). Neither judgment has been paid. (A.P. Doc. 30, Exh. 1, ¶¶ 15, 16). Cabinet ceased to conduct business as of May 30, 2010. (A.P. Doc. 30, Exh. 1, ¶ 18).

The only other evidence submitted by the Plaintiffs in support of their Motion is the affidavit of John W. Thomas ("Thomas"), a Tennessee certified public accountant engaged by the Plaintiffs "to review accounting, financial, and other records pertaining to the operation of Cabinet" and to "render [his] professional opinion regarding the existence of acts of embezzlement, larceny, fraud, or defalcation by officers/directors/or shareholders." (A.P. Doc. 30, Exh. 5, ¶ 2). Thomas's affidavit sets forth that he reviewed documents produced in response to discovery requests, as well as the sworn deposition testimony of the Debtor and his daughter, but no such responses or deposition transcripts are attached to Thomas's affidavit or otherwise of record in this case. In his affidavit, Thomas admits that he is basing his conclusions off of "inadequate documents" provided through discovery. (A.P. Doc. 30, Exh. 5, ¶ 4). Thomas then reviews some of the bank records of Cabinet, including cash deposits, withdrawals, and transfers of funds to insiders of Cabinet, none of which is disputed, but none of which is relevant to the determinations to be made by the Court in this matter, as Cabinet is not the debtor nor the plaintiff. Finally, Thomas summarily concludes that the Debtor "while acting in a fiduciary capacity as officer/director and/or shareholder of Cabinet, committed acts of embezzlement, larceny, fraud, or defalcation" (A.P. Doc. 30, Exh. 5, ¶ 8). However, Thomas fails to identify which of the acts of the Debtor constitute which of these bad acts, and, as set forth below, each of these acts have specific (and separate) legal elements and definitions. Thomas also fails to identify any of the Debtor's actions with respect to his individual obligations to the Plaintiffs which Thomas believes show the Debtor's embezzlement, larceny, fraud, or defalcation.

---

[5] The Chancery Court suit was stayed as to the Guarantors by this time due to their respective bankruptcy filings.

Further, and most importantly, while experts are permitted to give opinions regarding the ultimate facts in a matter, "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983). The issues identified by Thomas in his affidavit all involve the actions of the Debtor and his associates in managing Cabinet, perhaps making a case for Cabinet, if it were a creditor of the Debtor bringing this action. However, Thomas sets forth no allegations of any actions constituting fraud, defalcation, embezzlement, or larceny perpetrated by the Debtor directly against either of the Plaintiffs. Finally, Thomas's legal conclusions regarding the Debtor's actions are not binding on this Court and are of no moment.

## II. CONCLUSIONS OF LAW

### A. Standard

Rule 56 of the Federal Rules of Civil Procedure governs the process by which a court will grant or deny a motion for summary judgment. Summary judgment is only appropriate:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). In consideration of a motion for summary judgment, the Court must consider all the evidentiary matters with which it is presented, including, *inter alia*, admissions in pleadings, answers to interrogatories, depositions and affidavits. *Kennett-Murry Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). The burden of proof falls on the moving party, and "all reasonable doubts as to the existence of a genuine issue of material fact 'must be resolved against the moving party.'" *Id; quoting Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980). Evidence is to be viewed in the light most favorable to the non-moving party. However,

if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, the moving party should be granted the relief sought. However, neither unsupported allegations nor "affidavits setting forth ultimate or conclusory facts and conclusions of law" are sufficient to support a motion for summary judgment. *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). Further, the Court must resolve all reasonable factual inferences from the record in favor of the nonmovant, in this case the Debtor/defendant. *Id.*

### B. Liability of the Debtor as Guarantor.

It is undisputed that the Debtor signed a continuing personal guarantee of amounts due from Cabinet, to IPC (A.P. Doc. 3, ¶ 7), some of which was subsequently assigned to Winfield, and all of which was reduced to the judgments referenced above and obtained in Shelby County, Tennessee. The guarantee was entered into under Tennessee law, which provides that a "guarantor in a commercial transaction is held to the full extent of his engagement." *First Am. Nat'l Bank of Nashville v. Hall*, 579 S.W.2d 864, 868 (Tenn. App. 1978)(citations omitted). The terms of the guarantee provided that the Debtor agreed "to pay the full amount of any and all lawful claims of [IPC]." The Plaintiffs' claims against Cabinet have been reduced to judgment, and the Plaintiff has demonstrated that there is no genuine issue of material fact precluding a finding that the Debtor is liable on his guarantee as a matter of law. *Galleria Associates, L.P. v. Mogk*, 34 S.W.3d 874, 876 (Tenn. Ct. App.)(setting forth the requirements for and extent of commercial guarantor liability).

The Debtor is liable for post-judgment interest only through the date he filed his bankruptcy petition, January 11, 2012, since post-petition interest is only available to creditors with oversecured claims, and the Plaintiffs have not alleged nor proven that their claims are oversecured. 11 U.S.C. § 506(b). The Court therefore concludes that summary judgment is

6

appropriate as to the Debtor's liability for the amounts set forth in the judgments, but the Court reserves judgment regarding the appropriate amount of post-judgment, pre-petition interest due to the Plaintiffs from the Debtor. The Plaintiffs will be permitted at trial to present evidence regarding their entitlement to such interest and the appropriate amount of such interest.[6] Finally, the Court will not grant summary judgment as to the post-judgment insurance premiums sought by Winfield. Although it is clear from the evidence presented that Winfield continued to pay the life insurance premiums to maintain security for the debt owed to him by the Debtor, Winfield has presented no testimony or other evidence as to the duration of the Debtor's agreement to provide life insurance, and he has submitted no agreement proving his entitlement to the same.

### C.      **Dischargeability under 11 U.S.C. § 523(a)(4).**

Having concluded that the Debtor is liable to the Plaintiffs on his guarantee of amounts owed to the Plaintiffs, the Court will now consider the Motion for as to the nondischargeability of such debts. Section 523 of the Bankruptcy Code[7] outlines certain exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. *See Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)(*citing Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir. 1982)). An objecting creditor bears the burden of proving the elements of nondischargeability by a standard of preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). In the Motion, the Plaintiffs allege that the debts owed to the Plaintiffs are nondischargeable pursuant to §

---

[6] At trial, the Plaintiffs will also be permitted to present evidence regarding the amount of any post-judgment, post-petition interest and any other post-petition amounts due to the Plaintiffs under Tennessee law, because in the event the Court holds at trial that any debt owed to the Plaintiffs is nondischargeable, the Court may at that time enter a judgment for such additional amounts and hold such amounts to be nondischargeable as well. See, *Cohen v. de la Cruz*, 523 U.S. 213 (1998); *Gober v. Terra Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996).

[7] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

7

523(a)(4). Section 523(a)(4) provides that a discharge under section 727 does not discharge a debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The phrase "debt for" means "debt arising from" or "debt on account of." *Cohen v. de la Cruz,* 523 U.S. 213, 220 (1998). Accordingly, there are three separate types of debts rendered nondischargeable under § 523(a)(4): (1) debts resulting from fraud or defalcation while acting in a fiduciary capacity; (2) debts resulting from embezzlement; and (3) debts resulting from larceny. 11 U.S.C. § 523(a)(4).

*1. Fraud or Defalcation*

In order to prove that a debt is nondischargeable because the debt was incurred through fraud or defalcation while acting in a fiduciary capacity, the creditor must prove by a preponderance of the evidence that (1) the debtor had a fiduciary duty to the creditor and (2) the debtor committed fraud or defalcation while acting in his capacity as a fiduciary. 11 U.S.C. § 523(a)(4); *McDowell v. Stein,* 415 B.R. 584, 594 (S.D. Fla. 2009). The term "fraud" means intentional deceit, or positive fraud in fact "involving moral turpitude or intentional wrong" rather than any implied or constructive fraud. *Hardie v. Swafford Bros. Dry Goods Co.* 165 F. 588, 593 (5th Cir. 1908). The United States Supreme Court has recently addressed the bankruptcy-related definition of "defalcation," holding that defalcation may include both intentional wrongs and wrongdoing that is the result of an actor's conscious disregard (or willful blindness) of a "substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Bullock v. BankChampaign, N.A.,* --- U.S. --- (2013); 133 S.Ct. 1754, 1759. (internal citations omitted). The Court in *Bullock* further held that the risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of

conduct that a law-abiding person would observe in the actor's situation." *Id.* (citation omitted; emphasis in original). If the Debtor incurred any of the debt due to the Plaintiffs as a result of his fraud or defalcation, such fraud or defalcation must have also been perpetrated by the Debtor while acting in a fiduciary capacity to the Plaintiffs in order for such debt to be nondischargeable.

The definition of "fiduciary" for purposes of section 523(a)(4) is narrower than under common law, as it is "limited to instances involving express or technical trusts. The trustee's duties must . . . arise independent of any contractual obligation." *Shcolnick v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 627 (5th Circ. 2012)(citation omitted). Such a trust must exist prior to the alleged wrongful acts and without reference to those acts. *In re Salisbury* 331 B.R. 682 (Bankr. N.D. Miss. 2005)(citing *Davis v. Aetna Accept. Co.*, 293 U.S. 328, 333 (1934)). The Plaintiffs have not alleged any fiduciary duty owed to them by the Debtor pre-existing or independent of the transactions giving rise to the debts complained about herein. Courts have found nondischargeable "debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles" (e.g., bank officers, executors, guardians, receivers), and where the debtor was an officer of the creditor and did not deny that he was a fiduciary. *Shcolnick*, 670 F.3d at 628. In their brief, the Plaintiffs allege, without citation to any evidence or authority, that they are successors-in-interest to the insolvent corporation, Cabinet, of which the Debtor was an officer and director. Black's Law Dictionary defines the term "successor-in-interest" as "[o]ne who follows another in ownership or control of property." *Black's Law Dictionary* 1446 (7th Ed. 1999); *See also, Jones v. Parker*, 1993 WL 453756, *2 (Tenn. App. 1993). Cabinet is defunct corporation, and the Plaintiffs have not alleged that they own or control it or any successor entity. The Plaintiffs are merely creditors of

9

Cabinet and creditors of the Debtor. Accordingly, the Plaintiff is not the successor-in-interest to Cabinet, and any alleged fraud or defalcation perpetrated by the Debtor against Cabinet cannot be the basis of any nondischargeability judgment as to debts owed by the Debtor, individually, to the Plaintiffs. The Plaintiffs have cited no authority supporting their contention that they "stand in the shoes" of Cabinet, and the Court could find none.

However, "[s]tate law may also create a fiduciary relationship whose reach leads to nondischargeability." *Shcolnick*, 670 F.3d at 628. The Plaintiffs allege that the Debtor, through exercising control over Cabinet, misappropriated funds held in trust by Cabinet, for the benefit of the Plaintiffs under the obligations imposed on a contractor by Tennessee's Prompt Pay Act. Tenn. Code. Ann. § 66-34-101, *et. seq.* Section 66-34-304 of the Tennessee Code provides that

> Any sums received by the contractor as payment for work, services, equipment and materials supplied by the subcontractor, materialman or furnisher for improvements to real property shall be held by the contractor in trust for the benefit and use of such subcontractor, materialman or furnisher and shall be subject to all legal and equitable remedies.

The Plaintiffs have alleged insufficient facts to support any finding by the Court that any such statutory trust ever existed. No information has been provided by the Plaintiffs regarding any transactions that would give rise to the trust obligations set forth in the Tennessee statutes and which might ultimately provide a basis for a finding of nondischargeability under § 523(a)(4) or otherwise. According to Winfield's affidavits, materials were sold to and received by Cabinet, and not sold to and received by the Debtor individually. (A.P. Doc. 30, Exh. 1, ¶¶ 3, 7). There is likewise no allegation that the Debtor individually sold or received payment for any materials. Further, no facts have been alleged which would allow the Court to find that the Debtor held any funds on behalf of Cabinet, at all, whether in trust for either of the Plaintiffs or otherwise. While it is plausible that Cabinet may have held customer funds in trust for IPC

10

under this statute, there are insufficient facts before the Court to support such a finding.

### 2. *Embezzlement*

The Plaintiffs also allege that the debts owed to them by the Debtor are nondischargeable because the debts were incurred by the Debtor's embezzlement or larceny. The Plaintiffs contend that the Debtor "took possession of the Creditor's property (lumber), which was entrusted to Debtor on the condition of payment." (A.P. Doc. 30). First, this description appears to be simply the description of any sales transaction on account. From the record before the Court, IPC did not "entrust" the materials to the Debtor on the condition of payment; IPC sold Cabinet materials on an open-account basis. Further, IPC sold the materials to Cabinet, and not to the Debtor, so the Debtor individually never took possession of IPC's property. (A.P. Doc. 30, Exh. 1, ¶¶ 3, 7). However, even if the Court were to accept the Plaintiffs' unsupported contention that this is a distinction without a difference, the United States Supreme Court has held that "[e]mbezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895). Further, "[t]here must be proof of the debtor's fraudulent intent in taking the property." *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998). The court in *Miller* cited to a 6th Circuit case, which set forth the following elements of embezzlement, which a creditor must prove by a preponderance of the evidence: (1) creditor entrusted his property to the debtor; (2) debtor appropriated the property for a use other than that for which it was entrusted; and (3) circumstances indicate fraud. *Id.* In this case, the Plaintiffs have not proven any of these elements. It is clear from the record that IPC sold Cabinet (and not the Debtor individually) lumber and materials, and that the debt for the lumber was guaranteed by the Debtor. There is no allegation in the record that IPC retained title to the lumber and materials after it was transferred

to Cabinet, nor is there any evidence that Cabinet or the Debtor were required to use the lumber for any particular purpose or project. No evidence has been presented that the lumber and materials were used for any unintended purpose. The Plaintiffs have proven only that materials were supplied to the Debtor's company, the payment for which was guaranteed by the Debtor, and that no payment was received. Simple nonpayment is not evidence of fraud or embezzlement, but rather a breach of contract.

*3. Larceny*

Finally, the last kind of debt deemed nondischargeable under § 523(a)(4) are debts incurred by larceny. Federal common law defines larceny as a "felonious taking of another's personal property with intent to convert it or deprive the owner of same." *Smith v. Williams (In re Smith)*, 253 F.3d 703, 2001 WL 498662, *2 (5th Cir. 2001)(unpublished)(citing *In re Barrett*, 156 B.R. 529 (Bankr. N.D. Tex. 1993)). Larceny differs from embezzlement in that the original taking of the property in the case of embezzlement was lawful, or with the owner's consent, while in larceny, "the felonious intent must have existed at the time of the taking." *Moore*, 160 U.S. at 270. Accordingly, to prove larceny, the creditor must prove by a preponderance of the evidence that a debtor feloniously took the creditor's personal property with the intent to convert it or deprive the creditor of it. *Barrett*, 156 B.R. at 533 (citations omitted). Again, the Debtor is merely a guarantor of the debt, and he was not the recipient of the property at issue (Cabinet was). Further, there is nothing in the record that suggests that the transfer of the materials to Cabinet was unlawful; rather, the opposite appears to be true. The goods were voluntarily delivered by IPC to Cabinet. Cabinet purchased goods on account, and then failed to pay for the goods as agreed. If this sort of transaction constituted larceny or embezzlement, then trade debts would never be dischargeable.

### III. <u>CONCLUSION</u>

Summary judgment is appropriate when, after examination of all evidentiary matters presented, the Court concludes that no genuine issue of material fact exists and the movant is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322. Evidence must viewed in a light most favorable to the non-moving party, even if the non-movant does not respond in opposition to the motion. Further, although the Court may consider the facts undisputed for purposes of the motion, the Court may not grant summary judgment where the undisputed facts are not sufficient, or where judgment is not appropriate as a matter of law. FED. R. CIV. P. 56(e). In addition, exceptions to discharge are "strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson*, 107 F.3d at 356.

This Court concludes, in light of the undisputed evidence put forth by the Plaintiffs, that judgment against the Debtor on his guarantee of amounts owed to the Plaintiffs by Cabinet is appropriate, but that entry of such judgment should be delayed to allow the Plaintiffs to present evidence at trial regarding their entitlement to and the amount of post-judgment, pre-petition interest (and post-petition interest if the Plaintiff is successful in proving the debt non-dischargeable). However, the motion for summary judgment as to nondischargeability of those debts under § 523(a)(4) is not well-taken for the reasons set forth above, and is due to be denied. Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that

1. The Plaintiffs' Motion for Summary Judgment is **GRANTED** as to the Debtor's liability to the IPC in the amount of $92,900.26, and to Winfield in the amount of $1,178,818.02, under the Debtor's continuing guarantee of the debt of Cabinet, with leave for Plaintiffs to put on proof

of entitlement and amount of pre-petition and post-petition interest that should be added to the judgment amount; and

2. The Plaintiffs' Motion for Summary Judgment is **DENIED** as to the determination of nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(4); and

3. A pre-trial conference will be scheduled by the Court.

SO ORDERED on July12, 2013.

Jason D. Woodard
United States Bankruptcy Judge